NOT FOR PUBLICATION

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
### APPELLATE DIVISION

LEE J. ROHN, ATTORNEY FOR DENISE FERLAND,

      Appellant

      v.

LOIS JOHNSON THOMAS, EXECUTRIX FOR THE ESTATE OF O. JEFFREY THOMAS,

      Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

D.C. Civ. App. No. 2005-16

Super. Ct. No. 551/1994

2010 JUL 30 PM12: 11 RECEIVED
CLERK OF THE DISTRICT COURT
ST. THOMAS

On Appeal from the Superior Court of the Virgin Islands

Considered: April 1, 2007
Filed: July 30, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **FRANCIS J. D'ERAMO**, Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.

**Appearances:**

**K. Glenda Cameron, Esq.**
St. Croix, V.I.
    *Attorney for Appellant*

**Wilfredo A. Geigel, Esq.**
St. Croix, V.I.
    *Attorney for Appellee*

## MEMORANDUM OPINION

**Per Curiam.**

After a show cause hearing on February 23, 2004, appellant, Attorney Lee J. Rohn ("Rohn"), was found in contempt of court and fined $1,000. Rohn now appeals her conviction to this Court and requests a reversal of the Superior Court's finding. Rohn alleges that the Superior Court erred in two ways: denying her constitutional right to due process by refusing to permit evidence in support of her statements to the Court; and finding that Rohn knowingly misrepresented Attorney Wilfredo A. Geigel's ("Geigel") whereabouts to the Court when there was no basis in law or fact.

For reasons more fully outlined below, this case will be remanded to the Superior Court.

### I. FACTS

The matter of *Denise Ferland v. Lois Johnson Thomas, et al.*, Civ. No. 551/1994, was scheduled for a status conference on January 20, 2004 at 4:00 p.m. at the Superior Court of the Virgin Islands on St. Thomas. At approximately 3:45 p.m., Rohn informed Judge Kendall ("the Court") that Geigel had failed to appear in a previous matter that morning, and expressed her doubt as to

whether Geigel would be present for the status conference at 4 p.m. The Court gave Rohn permission to call Geigel's office on St. Croix to inquire about his whereabouts. After the phone call was made, Rohn advised the Court that she was told by a member of Geigel's staff that he was in Puerto Rico.

The Court then issued an Order to Show Cause for Geigel. Subsequently, at about 3:55 p.m., Geigel appeared in Court and stated that he was waiting outside the courtroom for the Status Conference to begin. The Court attempted to locate Rohn to proceed with the Status Conference, but was unable to do so. The matter was continued, and an Order to Show Cause was issued for Rohn.

On March 2, 2004, Rohn issued a subpoena to Seaborne Airlines, requiring production of Geigel's travel itinerary on January 20, 2004. Geigel filed a motion to quash the subpoena on March 3, 2004. Rohn allegedly[1] filed an opposition to the motion on March 8, 2004. On March 10, 2004, the Court granted the motion on the grounds that Rohn did not file her opposition within five days, and therefore, her opposition was untimely. The Court further noted that the subpoena was not issued to

---

[1] The record shows a document dated March 8, 2004, titled "Opposition to Motion to Quash Subpoena and for Sanctions." However, that document does not appear to have a date stamp by the Superior Court to indicate that the opposition was actually filed with the Superior Court.

obtain information regarding *Ferland v. Thomas,* and thus it was

inappropriate under Rules 26, 30, and 32 of the Federal Rules of

Civil Procedure.

The trial court held a show cause hearing on March 11, 2004.

At the hearing, the Court heard sworn testimony from three[2]

employees from Geigel's office.  The first employee, Damaris

Soto, the receptionist, testified that she had spoken to Rohn on

January 20, 2004, and informed her only that Geigel was off-

island.  The second witness, Susan Palumbo, Geigel's secretary,

testified that after the call from Rohn, she called Rohn's office

and spoke to Debbie Henry, Rohn's office manager.  Palumbo told

Henry that Geigel was on St. Thomas and would be attending the

status hearing at 4 p.m. that afternoon.  Palumbo also testified

that Geigel was on St. Thomas doing depositions that entire

morning.

At the end of the presentation of Geigel's witnesses, Rohn

attempted to call Debbie Henry as a witness.  The Court denied

her request, stating:

> I don't think her testimony is relevant because it's
> your contention, Attorney Rohn, that you spoke to one
> individual who advised you that he was in Puerto Rico.
> I don't see what any relevance Ms. Henry's testimony is
> going to have pertaining to this matter at this time.

---

[2] Geigel's bookkeeper, Adela Encarnacion, also testified.
Her testimony only indicated that she had not spoken to Rohn on
January 20, 2004.

(Hr'g Tr., 18-19.)  At the end of all the testimony, the Court
found that Rohn knowingly misrepresented Geigel's whereabouts to
the Court on January 20, 2004.  Further, the Court noted that the
continuance in the underlying matter disrupted the operation of
and caused inconvenience to the Court.  There was no reference to
the law the Court relied upon for its determination.

## II. STANDARD OF REVIEW

This Court has jurisdiction to review appeals from all final
decisions of the Superior Court of the Virgin Islands. *See* V.I.
ANN. CODE tit.4, § 33 (2006); Revised Organic Act of 1984,§ 23A.

"We review a finding of contempt for abuse of discretion,
reversing only for an error of law or clearly erroneous finding
of fact." *Harris v. City of Philadelphia*, 47 F.3d 1333, 1340 (3d
Cir. 1995) (citing *United States v. Sarbello*, 985 F.2d 716, 727
(3d Cir. 1993)).  Questions of law are subject to plenary review
by the Court. *Government of the Virgin Islands v. Santiago*, 937
F. Supp. 1157, 1158 (D.V.I. App. Div. 1996).

## III. DISCUSSION AND ANALYSIS

### A.    Finding of Contempt

There are two types of contempt: criminal and civil.[3]

---

[3] The criminal contempt provision in the Virgin Islands is
found at V.I. CODE ANN. tit. 14, § 581, and the civil
contempt/general contempt provision is found at V.I. CODE ANN.

Whether a sanction for contempt is criminal or civil depends on the character of the sanction imposed, not on the subjective intent of the court. *Hicks v. Feiock*, 485 U.S. 624, 636 (1988). A fine is civil if it serves to coerce a defendant into complying with a court's orders or to compensate the complainant for losses sustained as a result of the defendant's non-compliance. *United States v. Mine Workers*, 330 U.S. 258, 303-304 (1947). In contrast, a fine which is punitive and vindicates the court's authority is criminal. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911).

The hearing below held traits of both criminal and civil contempt. For instance, the court found that Rohn knowingly misrepresented Geigel's whereabouts to the Court. There was no indication in the trial court's order that the ruling was based on a violation of a prior court order. The contempt sanction also did not seek to coerce Rohn to comply with any order of the court. Rather, the trial court imposed an unconditional fine upon Rohn for misrepresenting information to the court. These circumstances suggest that the contempt order was criminal rather than civil. *See United States v. Marquardo*, 149 F.3d 36, 39 (1st Cir. 1998) ("The purpose of civil contempt is to coerce compliance with an order of the court. . . . Criminal contempt,

---

tit. 4, § 244.

on the other hand, is used to punish disobedience with a judicial order, and thus vindicates the authority of the court."); *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1182 (3d Cir. 1976) ("Sanctions which are imposed unconditionally strongly suggest a punitive purpose and a criminal contempt.").

In contrast, there are traits that would suggest that the proceeding was civil. Here, unlike a criminal contempt proceeding, the parties, rather than the government, prosecuted the contempt proceedings in their client's name. Under these circumstances, the proceeding would be viewed as civil rather than criminal. *See Gompers*, 221 U.S. at 444-445 ("Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause.").

The fine imposed on Rohn is also problematic. While fines are a type of sanction available to the trial court in a civil contempt proceeding, such fines are to be coercive in nature rather than punitive. *See United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1182 (3d Cir. 1976) (noting that "the purpose of a civil contempt order is remedial to coerce compliance . . . or recompense a party for losses caused by noncompliance").

However, the circumstances of this matter preclude the coercive nature of the fine. Significantly, the sanction does not seek to coerce compliance with a court order. Rather, the sanction is a fixed, unconditional fine of $1,000, which suggests a punitive purpose. *See id.* ("Sanctions which are imposed unconditionally strongly suggest a punitive purpose and a criminal contempt."); *see also East End Taxi Services, Inc. v. Virgin Islands Taxi Ass'n, Inc.*, Civ. App. No. 2006-146, 2008 WL 570948, *9 (D.V.I. App. Div. Feb. 6, 2008) ("a fine is a criminal contempt sanction if the amount of the fine is fixed and imposed unconditionally as a punishment for past disobedience."); *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947) (holding that a "flat, unconditional fine" for $50 was a criminal sanction because the contemnor had no subsequent opportunity to reduce or avoid the fine through compliance).

## IV. CONCLUSION

The legal basis on which the trial court proceeded is unclear. Additionally, it is unclear what if any efforts were undertaken to provide procedural safeguards to the contemnor. Accordingly, the Court will remand this matter to the Superior Court to conduct such proceedings as are necessary and consistent with this opinion.